UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANGEL BORGES,

                              Plaintiff,

   -against-                                              9:20-CV-245 (LEK/DJS)

SCHENECTADY COUNTY, *et al.*,

                              Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.  INTRODUCTION**

Angel Borges commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983, together with an application for leave to proceed in forma pauperis ("IFP"). Dkt. No. 2 ("Complaint"); Dkt. No. 7 ("IFP Application").[1] By Decision and Order filed April 29, 2020, this Court granted Plaintiff's IFP Application, but following review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), found that it was subject to dismissal for failure to state a claim upon which relief may be granted. Dkt. No. 10 ("April 2020 Order"). In light of Plaintiff's pro se status, he was afforded an opportunity to submit an amended complaint. Id. at 10–12.

Presently before the Court is Plaintiff's amended complaint. Dkt. No. 11 ("Amended Complaint"). Plaintiff asserts claims under § 1983 arising from his incarceration in the

---

[1] This action was originally commenced in the Southern District of New York. By Order filed on February 27, 2020, the Honorable Colleen McMahon of the Southern District of New York transferred the action to this District. Dkt. No. 4. Transfer was completed on March 5, 2020. Dkt. No. 5. Thereafter, Plaintiff's initial application to proceed IFP was denied as incomplete and the action was administratively closed. Dkt. No. 6. Plaintiff then timely filed his IFP Application, together with an inmate authorization form, and this action was re-opened. Dkt. No. 7–9.

Schenectady County Jail against an unnamed doctor, five unnamed nurses, Correction Sergeant Catalano, and Schenectady County. See generally id.

## II.     SUFFICIENCY OF THE AMENDED COMPLAINT

### A.  The Complaint and April 2020 Order

In the original Complaint, Plaintiff asserted claims against Schenectady County Jail, Schenectady County Jail Medical Services, "an employee of Corr. Med. Inc., whose identity cannot [be determined,]" and various "Doe" officials employed at the Schenectady County Jail, based on alleged wrongdoing that occurred while Plaintiff was incarcerated at that facility. See generally Compl. The Court construed the Complaint to assert medical indifference claims against the aforementioned defendants. See April 2020 Order at 5.[2,3]

Following review of the Complaint pursuant to §§ 1915(e)(2)(B) and 1915A(b), Plaintiff's claims were dismissed without prejudice for failure to state a claim upon which relief may be granted. See April 2020 Order at 7–11.

### B.  Review of the Amended Complaint

The following facts, alleged in the Amended Complaint, are assumed to be true. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 76 (2d Cir. 2015).

On September 19, 2019, Plaintiff was arrested, arraigned, and "brought to [Schenectady]

---

[2] Because it was unclear from the Complaint whether Plaintiff was a pretrial detainee or convicted prisoner at the time of the events giving rise to his claims, the Court did not specify whether Plaintiff's medical indifference claims arose under the Eighth or Fourteenth Amendments.

[3] The Court construed the claim against Schenectady County Jail to be asserted against Schenectady County. April 2020 Order at 5–6. In so doing, the Court explained that the Jail is merely an administrative arm of the municipality, without a legal identity separate and apart from the municipality, and therefore cannot sue or be sued. Id.

County Jail for processing." Am. Compl. at 7.[4] The next day, Plaintiff "complained of chest pains[.]" Id. Plaintiff was assessed by one or more unidentified officials, and thereafter transported by ambulance to an outside hospital. Id. While at the hospital, Plaintiff underwent "numerous test[s]" and was given "an IV and medication" to lower his blood pressure. Id. Plaintiff remained at the hospital for approximately ten hours. Id.

Upon returning to the jail, Plaintiff "was told by the staff in medical that if anything else were to occur[,]" he should "let the floor officer know immediately." Am. Compl. at 7. Plaintiff was then escorted back to his cell and placed "under observation by a correctional officer for the following 24 hours." Id.

Roughly seven to ten days after Plaintiff's hospital visit, his left arm "went numb" and he experienced "severe chest pains[.]" Am. Compl. at 7. Plaintiff advised the floor officer of his condition and was then taken to the medical facility in a wheelchair. Id. Upon arriving at the medical facility, a nurse ("Nurse Jane Doe #1") tested Plaintiff's blood pressure, which was "238." Id.[5] Nurse Jane Doe #1 gave Plaintiff "aspirin and nitro[,]" and then contacted Doctor

---

[4] Page numbers cited herein refer to those generated by the Court's electronic filing system ("ECF").

[5] The Amended Complaint does not identify this nurse as a defendant and fails to provide any details or description regarding this nurse or any other nurse who evaluated Plaintiff during his subsequent visits to the medical facility. Instead, with respect to each visit to the medical facility described in the Amended Complaint, Plaintiff alleges only that he was seen by a "nurse." See Am. Compl. at 7–9. Thus, it is unclear whether Plaintiff was evaluated by the same nurse multiple times in his multiple visits to the medical facility. However, because Plaintiff has named five "Doe" nurses as defendants, and the Amended Complaint identifies only three occasions when Plaintiff was evaluated by a nurse at the Schenectady County Jail, the Court has assumed, for purposes of this Memorandum-Decision and Order only, that (1) Plaintiff was never evaluated more than once by the same nurse during his confinement at Schenectady County Jail, and that (2) each "nurse" who allegedly evaluated Plaintiff at the Schenectady County Jail was intended to be identified as a "Doe" defendant.

John Doe. Id. After speaking with Doctor John Doe, Nurse Jane Doe #1 advised Plaintiff that the doctor had ordered that he be returned to his cell. Id. Nurse Jane Doe #1 further stated that although she knew Plaintiff did not feel well, she was "obligated to do as the doctor said." Id.

The following week, Plaintiff "again . . . had numbness in [his] left arm and . . . severe chest pains." Am. Compl. at 7. Plaintiff advised the floor officer and was thereafter escorted to the medical facility. Id. At the medical facility, a nurse ("Nurse Jane Doe #2") tested Plaintiff's blood pressure, which was "well over 200[.]" Id. Plaintiff told Nurse Jane Doe #2 "that the pain in [his] arm and chest was worse than the prior week." Id. at 7–8. Plaintiff was "given aspirin and nitro again," and Nurse Jane Doe #2 called Doctor John Doe, who ordered that Plaintiff be returned to his cell. Id. at 8.

The following week, Plaintiff was seen by Doctor John Doe at the jail. Am. Compl. at 8. Doctor John Doe "put [Plaintiff] on a different and higher dose of medication, which only compounded the pain [he] was already in." Id. Plaintiff stopped taking this newly prescribed medication after approximately three weeks, and sought to file a grievance, but was told by "the Corrections staff, medical staff and the Sergeants . . . that [he] cannot grieve this issue." Id.

On November 28 and 29, 2019, Plaintiff again experienced chest pains and numbness in his left arm. Am. Compl. at 8. Plaintiff "told medical that [he] needed to go to the hospital again and was told no." Id. Correction Sergeant Catalano and a nurse ("Nurse Jane Doe #3") then arrived at Plaintiff's cell, at which point Plaintiff told them that he had experienced pain in his arm and chest for "too long" and needed to be brought to the hospital. Id. Instead, Plaintiff was escorted to the medical facility. Id.

Upon Plaintiff's arrival at the medical facility, Nurse Jane Doe #3 tested Plaintiff's blood

pressure, which was "240." Am. Compl. at 8. Nurse Jane Doe #3 gave Plaintiff "4 nitro pills" and informed him that she believed he "should be in the hospital" but that this decision was up to Doctor John Doe. Id. Thereafter, Doctor John Doe ordered that Plaintiff be returned to his cell. Id.

While escorting Plaintiff back to his cell, Catalano "pulled [him]" and "harass[ed] [him] in the elevator[,]" telling Plaintiff that he "should just die and get it over with." Am. Compl. at 8. Catalano also wrote Plaintiff a misbehavior report for "disrespecting him, the nurse[,] and [an unidentified correction officer]" by requesting transport to a hospital. Id.

On December 5, 2019, Plaintiff was sentenced to two and one half years' imprisonment with two years of post-release supervision. Am. Compl. at 8.[6]

On December 9, 2019, Plaintiff "woke up with really bad chest pains[.]" Am. Compl. at 9. Plaintiff advised "staff" and was told that he "didn't have to worry because [he] was being transferred to Downstate [Correctional Facility]." Id. Later that day, Plaintiff was transported to Downstate Correctional Facility. Upon arrival, Plaintiff informed an unidentified correction official that Plaintiff was "having severe chest pains and numbness in [his] left arm." Id.

The next day, Plaintiff "went for processing in medical and told the nurse [he] was having chest pain and [his] left arm was numb[.]" Am. Compl. at 9. Plaintiff was "given an EKG[,]" after which the nurse stated, "something is wrong[.]" Id. The nurse then contacted a doctor, who reviewed Plaintiff's medical records and EKG. Id. Thereafter, Plaintiff was transported to a local hospital by ambulance. Id.

Eventually, Plaintiff underwent bypass surgery. Am. Compl. at 9.

---

[6] The Amended Complaint fails to allege when Plaintiff became a convicted prisoner.

In addition to the aforementioned defendants, Plaintiff also names Schenectady County, Nurse Jane Doe #4, and Nurse Jane Doe #5 as defendants. See Am. Compl. at 2–3.

Liberally construed, the Amended Complaint asserts a Fourteenth Amendment medical indifference claim against each defendant, and a Fourteenth Amendment excessive force claim against Catalano.[7] Plaintiff seeks monetary relief. Am. Compl. at 11.

**C. Analysis**

Because Plaintiff is proceeding IFP and is an inmate suing one or more government employees, his Amended Complaint must be reviewed in accordance with §§ 1915(e)(2)(B) and 1915A(b). The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to §§ 1915(e)(2)(B) and 1915A(b) was discussed at length in the April 2020 Order, familiarity with which is assumed. See April 2020 Order at 2–4.

   *1. Nurse Jane Doe #4 and Nurse Jane Doe #5*

As noted in the April 2020 Order, "'where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff,' the complaint has failed to state a claim against that defendant." April 2020 Order at 9 (quoting Cipriani v. Buffardi, No. 06-CV-889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing Gonzalez v. City of New York, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998))).

As discussed, see supra note 5, the Amended Complaint fails to describe the nurse who evaluated Plaintiff during each of his three alleged visits to the medical facility, and fails to specify whether Plaintiff was seen by one or multiple nurses during his visits. However, even

---

   [7] The Court assumes, for purposes of this Memorandum-Decision and Order only, that Plaintiff was a pretrial detainee at the time of the alleged events giving rise to his claims.

assuming, as the Court has, that Plaintiff was evaluated by a different nurse during each of the three occasions that he was allegedly taken to the medical facility, the Court has no basis to plausibly infer that Plaintiff received medical attention from more than three nurses during his confinement at Schenectady County Jail.

Accordingly, Plaintiff's § 1983 claims against Nurse Jane Doe #4 and Nurse Jane Doe #5 are dismissed pursuant to §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. *Municipal Liability*

In the April 2020 Order, the Court dismissed Plaintiff's § 1983 claims against Schenectady County, because the Complaint failed to allege that any of the wrongdoing described in the Complaint occurred pursuant to a policy or custom of the Schenectady County Jail. See April 2020 Order at 7. The legal standard governing a claim for municipal liability was discussed at length in the April 2020 Order, familiarity with which is assumed. See April 2020 Order at 5–7.

As with the original Complaint, the Amended Complaint lacks any allegations that plausibly suggest that any of the alleged wrongdoing occurred pursuant to a policy or custom of the Schenectady County Jail.

Accordingly, and for the reasons discussed in the April 2020 Order, Plaintiff's municipal liability claims are dismissed without prejudice pursuant to §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. *Excessive Force Claim*

Assuming, for purposes of this Memorandum-Decision and Order only, that Plaintiff was

a pretrial detainee at the time of the events giving rise to his claims, Plaintiff "receive[d] protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment[.]" Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009), overruled on other grounds by Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017); see also Kingsley v. Hendrickson, 135 S.Ct. 2466, 2470–71 (2015).

In Kingsley, the Supreme Court distinguished between Eighth and Fourteenth Amendment excessive force claims, holding that a pretrial detainee need not demonstrate that an officer accused of using excessive force was subjectively aware that his use of force was unreasonable. See 135 S.Ct. at 2470–71. Rather, "to prove an excessive force claim, a pretrial detainee must show . . . only that the officers' use of that force was objectively unreasonable." Id. at 2473.[8] In making that objective determination, the court must view the matter from "the perspective of a reasonable officer on the scene," and consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

"Additionally, claims for excessive force under the Fourteenth Amendment must involve force that is either 'more than de minimis' or 'repugnant to the conscience of mankind.'" Lewis

---

[8] This objective reasonability standard is also applicable to excessive force claims brought under the Fourth Amendment. See, e.g., Jackson v. City of White Plains, No. 05-CV-0491, 2015 WL 4739762, at *4 (S.D.N.Y. Aug. 7, 2015) ("[W]hether or not the Court applies the Fourteenth Amendment standard [to plaintiff's excessive force claim] . . . or the Fourth Amendment standard . . . , the outcome is now the same—Plaintiff's claim is to be analyzed using an objectively reasonable standard, without regard to the subjective intent of the Defendants.").

v. Huebner, No. 17-CV-8101, 2020 WL 1244254, at *5 (S.D.N.Y. Mar. 16, 2020) (quoting United States v. Walsh, 194 F.3d 37, 48 (2d Cir. 1999) (internal citation and quotation marks omitted)); see also Lynch v. City of New York, No. 18-CV-1247, 2020 WL 1036620, at *7–8 (2d Cir. Mar. 4, 2020) (explaining that "there is a de minimis level of imposition with which the Constitution is not concerned," and holding that a protestor who was detained for five hours and punitively denied food, drink, and access to a bathroom failed to state a Fourteenth Amendment claim (internal citation and quotation marks omitted)); cf. Graham v. Connor, 490 U.S. 386, 396–98 (1989) (explaining that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment[,]" and that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional").

Moreover, verbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under § 1983. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (internal quotation marks omitted); see also Rivera v. Goord, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases); Baskerville v. Goord, No. 97-CV-6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000) ("Mere verbal abuse or the use of . . . slurs or epithets reflecting . . . prejudice, although reprehensible, does not form the basis of a claim pursuant to § 1983."). Indeed, "[t]he

protection afforded by section 1983 is not as extensive as that afforded by the common law tort action for assault and, even at common law, 'mere words, however violent, are held not to amount to an assault.'" St. Germain v. Goord, No. 96-CV-1560, 1997 WL 627552, at *3 (N.D.N.Y. Oct. 8, 1997) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973), cert. denied, 414 U.S. 1033 (1973)).

The Amended Complaint fails to allege facts that plausibly suggest that Catalano's words or actions subjected Plaintiff to harm rising to the level of a constitutional violation. Mere verbal abuse, see Am. Compl. at 8 (alleging that Catalano told Plaintiff he "should just die and get it over with"), cannot in itself constitute excessive force under the Fourteenth Amendment. See, e.g., Purcell, 790 F.2d at 265. And although Plaintiff alleges that Catalano "pulled" him, see Am. Compl. at 8, the Amended Complaint does not explain how or for how long Plaintiff was "pull[ed,]," whether any injuries resulted, or any other facts necessary for the Court to determine whether this use of force was "more than de minimus" or objectively unreasonable. See id.; see also Walsh, 194 F.3d at 48; Kingsley, 135 S.Ct. at 2470–71. Without more detail, Plaintiff thus cannot state a Fourteenth Amendment use-of-force claim.

Accordingly, Plaintiff's Fourteenth Amendment use-of-force claim against Catalano is dismissed pursuant to §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

*4. Medical Indifference Claims Against the Individual Defendants*

To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must satisfy a two-pronged test. First, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'" Lloyd v. City of New York, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017)

(quoting Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 139 (2d Cir. 2013)). Second, the defendant must act with a "sufficiently culpable state of mind." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

The objective prong requires "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998)). To determine whether inadequate care is "sufficiently serious," a court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). "Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.'" Revels v. Corr. Med. Care, Inc., No. 17-CV-88, 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003)); see also Ray v. Zamilus, No. 13-CV-2201, 2017 WL 4329722, at *8 (S.D.N.Y. Sept. 27, 2017) (finding that where a "plaintiff suffered from a delay in treatment, rather than a complete lack of treatment, the objective element must be satisfied by harm that resulted from the delay").

"Until very recently, the second, or mens rea, prong—the defendant's 'sufficiently culpable state of mind'—was assessed subjectively in claims brought under both the Eighth and the Fourteenth Amendments." Davis v. McCready, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017)

11

(quoting Spavone, 719 F.3d at 138). However, in light of the Supreme Court's ruling in Kingsley, "the mens rea prong of a deliberate indifference claim brought by a pretrial detainee is now to be assessed objectively." Id. at 117; Lloyd, 246 F. Supp. 3d at 719. Thus, "rather than ask whether the charged official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,' courts are to instead determine whether the official 'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety.'" Lloyd, 246 F. Supp. 3d at 719 (quoting Darnell, 849 F.3d at 33, 35).

At this early stage of the proceeding, the Court finds that a response to Plaintiff's Fourteenth Amendment medical indifference claims is warranted from Nurse Jane Doe #2, Nurse Jane Doe #3, and Doctor John Doe, based on Plaintiff's allegations that these defendants continually declined to send Plaintiff to the hospital despite a recurring emergency health condition. See Am. Compl. at 7–8.

The Court, however, reaches a different conclusion with respect to Plaintiff's medical indifference claims against Nurse Jane Doe #1 and Catalano.

With regard to Nurse Jane Doe #1 (assuming that this is a different person from Nurse Jane Doe #2 and Nurse Jane Doe #3, see supra note 5), Plaintiff alleges that she checked his blood pressure following his complaints of numbness in his left arm and chest pains, gave him "aspirin and nitro[,]" and then contacted Doctor John Doe, who recommended that Plaintiff be returned to his cell. Id. at 7. These allegations suggest that Nurse Jane Doe #1 took reasonable steps to treat Plaintiff, even if they were, as Plaintiff suggests, based on a misunderstanding of the nature of Plaintiff's condition. The Amended Complaint alleges that roughly one week earlier, Plaintiff had undergone a 10-hour evaluation at a hospital, and the Amended Complaint

lacks any allegations that plausibly suggest that he was diagnosed with a condition of urgency or recommended for any surgical procedure at that time. Thus, the Court has no basis to plausibly infer from the allegations in the Amended Complaint that Nurse Jane Doe #1 knew or should have known that Plaintiff was suffering from a condition of urgency that would not improve with the medication she issued such that her alleged decision to follow Doctor John Doe's directive to return Plaintiff to his cell plausibly suggests objective deliberate indifference. See Darby v. New York City Health & Hosps. Corp., No. 18-CV-2869, 2019 WL 1994490, at *5–6 (E.D.N.Y. May 6, 2019) (finding that a dental associate's failure to refer plaintiff to a specialist in response to complaints about pain near his gums that was ultimately determined to be a "large mass" that required surgical extraction did not satisfy mens rea prong of Fourteenth Amendment medical indifference claim, because the complaint lacked allegations that defendant knew or should have known that plaintiff's condition presented an "excessive risk" to plaintiff's health, and because the failure to adequately diagnose a condition is not a basis for finding objective deliberate indifference); Ward v. Coley, No. 18-CV-2382, 2019 WL 977887, at *6 (S.D.N.Y. Feb. 28, 2019) (finding allegations of dissatisfaction with medical treatment insufficient to satisfy the mens rea prong of a Fourteenth Amendment medical indifference claim).

With regard to Catalano, the Amended Complaint lacks any allegations that plausibly suggest that he, as a non-medical professional, had any way of knowing that the medical treatment Plaintiff received on or about November 29, 2019 would not improve Plaintiff's condition such that his alleged decision to follow, rather than oppose, Doctor John Doe's directive to return Plaintiff to his cell amounted to objective deliberate indifference. See, e.g., Trapani v. Dagostino, No. 18-CV-0805, 2019 WL 5149795, at *8 (N.D.N.Y. June 10, 2019) ("At

13

most, plaintiff's allegations plausibly suggest that defendant Robistow relied on the medical opinion of defendant Wood in not removing plaintiff from his cell for further evaluation. This is not enough to support a medical indifference claim against a corrections official."), reconsideration denied by 2019 WL 5303784 (N.D.N.Y. Oct. 21, 2019); Feliciano v. Anderson, No. 15-CV-4106, 2017 WL 1189747, at *14 (S.D.N.Y. Mar. 30, 2017) (plaintiff failed to state a claim against correctional officer, because "[c]orrections officers who defer to the judgment of medical professionals are only liable if the plaintiff pleads facts demonstrating that the 'nonmedical defendants should have challenged the medical professionals' decisions'"); Nix v. Lester, No. 16-CV-828, 2017 WL 3610576, at *8 (N.D.N.Y. Aug. 4, 2017) (recommending dismissal of medical indifference claim against two corrections officers who were present during allegedly inadequate medical evaluation, noting that these officers, as "non-medical professionals, were entitled to rely on the opinion of medical staff "), report and recommendation adopted sub nom. by Nix v. Doe, 2017 WL 3601239 (N.D.N.Y. Aug. 21, 2017); Butler v. Smith, No. 07-CV-431, 2008 WL 4186338, at *1, *6 (N.D.N.Y. Sept. 10, 2008) (dismissing medical indifference claim against corrections sergeant who was present during allegedly inadequate evaluation of plaintiff by medical staff where there were no allegations that corrections sergeant "had any medical training, . . . [or] had any other reason to question the judgment of those medical staff members and their treatment of plaintiff ").

For these reasons, Plaintiff's medical indifference claims against Nurse Jane Doe #1 and Catalano are dismissed pursuant to §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

## IV. SERVICE OF THE AMENDED COMPLAINT

Although Plaintiff's medical indifference claims against Nurse Jane Doe #2, Nurse Jane Doe #3, and Doctor John Doe have survived sua sponte review, Plaintiff is apparently unable to identify these Doe defendants by name. The Clerk of the Court shall send a copy of the amended complaint and this Memorandum-Decision and Order to the Schenectady County Attorney's Office. Pursuant to Valentin v. Dinkins, 121 F.3d 72 (2d. Cir. 1997) (per curiam), the Court requests that the Schenectady County Attorney's Office attempt to ascertain the full names of the aforementioned Doe defendants.[9] The Court also requests that the Schenectady County Attorney's Office, to the extent that it is able, identify these Doe defendants and provide addresses where they can be served. The Schenectady County Attorney's Office need not undertake to defend or indemnify these individuals at this juncture. This order merely provides a means by which Plaintiff may name and properly serve the defendants as instructed by the Second Circuit in Valentin.

The Court hereby directs the Schenectady County Attorney's Office to produce the information specified above, to the extent that it can, regarding Nurse Jane Doe #2, Nurse Jane Doe #3, and Doctor John Doe within thirty (30) days of the filing date of this Memorandum-Decision and Order. This information should be sent to the Clerk of the Court for the Northern District of New York along with a copy of this Memorandum-Decision and Order, as well as to Plaintiff at his address of record. Once this information is provided, the Clerk shall return this file to the Court for further review.

---

[9] In Valentin, 121 F.3d at 75–75, the Second Circuit held that district courts must assist pro se incarcerated litigants with their inquiry into the identities of unknown defendants.

V.       **CONCLUSION**

Accordingly, it is hereby

**ORDERED** that the Clerk shall update the docket to identify the defendants as follows: (1) Nurse Jane Doe #1; (2) Nurse Jane Doe #2; (3) Nurse Jane Doe #3; (4) Nurse Jane Doe #4; (5) Nurse Jane Doe #5; (6) Doctor John Doe; (7) Corrections Sergeant Catalano; and (8) Schenectady County; and it is further

**ORDERED** that Plaintiff's Fourteenth Amendment medical indifference claims asserted against Nurse Jane Doe #2, Nurse Jane Doe #3, and Doctor John Doe **SURVIVE** sua sponte review and require a response; and it is further

**ORDERED** that Plaintiff's remaining claims are **DISMISSED without prejudice** pursuant to §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk shall **TERMINATE** Schenectady County, Nurse Jane Doe #1, Nurse Jane Doe #4, Nurse Jane Doe #5, and Correction Sergeant Catalano as defendants; and it is further

**ORDERED** that the Clerk shall send a copy of the Amended Complaint and this Memorandum-Decision and Order to the Schenectady County Attorney's Office. To the extent possible, the Schenectady County Attorney's Office is hereby directed to produce the information specified above regarding the identities of the Doe defendants **within thirty (30) days** of the filing date of this Memorandum-Decision and Order. Upon receipt of a response from the Schenectady County Attorney's Office, as directed above, the Clerk shall return this file to the Court for further review; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk serve a copy of this Memorandum-Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

DATED:   September 08, 2020
         Albany, New York

_____
Lawrence E. Kahn
Senior U.S. District Judge